# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3872-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

E.G.,

      Defendant-Appellant,

and

D.L.J., Sr.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.L.J., Jr.,

      a Minor.

_____

      Submitted January 8, 2019 – Decided January 25, 2019

      Before Judges Suter and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0044-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Louis W. Skinner, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Iraisa C. Orihuela-Reilly, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for the minor (Melissa R. Vance, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant E.G.[1] appeals from an April 13, 2018 judgment of guardianship terminating her parental rights to her son, D.L.J., Jr., presently eleven years old. On January 22, 2018, D.L.J., Jr.'s father, D.L.J., Sr., made an identified surrender of his parental rights to D.L.J., Jr. to the child's paternal aunt and uncle, T.D.B. and R.B., and does not appeal from the judgment. After a two-day guardianship hearing, during which E.G. and two witnesses testified, Judge W. Todd Miller terminated E.G.'s parental rights, finding that the Division of

---

[1] Pursuant to Rule 1:38-3(d), we use initials to protect the confidentiality of the participants in these proceedings.

Child Protection and Permanency (Division) satisfied all four prongs of the best interests standard set forth in N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.[2]

On appeal, E.G. contends the Division failed to prove by clear and convincing evidence the four-prong statutory standard. After reviewing the record and applicable legal principles, we reject E.G.'s contentions and affirm substantially for the reasons expressed by Judge Miller in his comprehensive oral and written opinions.

---

[2] These four prongs are:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

In essence, E.G. argues there was no clear and convincing evidence to prove all four prongs of the statutory best interests test. E.G. asserts the record shows she successfully raised two other children and that D.L.J., Jr.'s wishes were "all but ignored." She contends there is no substantial and credible evidence in the record to show she harmed D.L.J., Jr. She also contends the Division "was manipulating the situation beginning when [D.L.J., Jr.] was placed with [T.D.B.]" She claims the Division's "actions throughout their involvement indicate that adoption was their goal from the beginning." E.G's arguments are without sufficient merit to warrant further discussion, beyond the following comments. R. 2:11-3(e)(1)(E).

Judge Miller's opinions reviewed the evidence in great detail. A summary will suffice here. D.L.J., Jr. is an eleven-year-old boy who has been out of the care of his mother since she refused to comply with the Division's requests that she participate in services in 2016.[3] He was removed from E.G.'s custody after he had missed 109 days of school and was tardy an additional ten days. He was behind academically when he was removed. He had no bed and was smoking

---

[3] E.G. has a long history with the Division dating back to 2005. In 2006, she pleaded guilty to abuse and neglect of a child, N.J.S.A. 9:6-3.

cigarettes that were allegedly "dipped in embalming fluid." D.L.J., Jr. has resided with his paternal aunt and uncle since shortly after his initial removal.

The Division presented unrebutted expert testimony of Dr. Alan Lee, a forensic psychologist, who testified E.G. is cognitively limited and has significant mental illness. E.G.'s full scale I.Q. is 53, placing her in the lowest one percent. She reads at a fourth grade level. Her Global Assessment of Functioning (GAF)[4] was 32, reflecting a moderate to severe level of impairment.

E.G.'s diagnostic impression included the following mental disorders: Psychotic Disorder Not Otherwise Specified (NOS) (Provisional), Rule out Schizophrenia, Rule Out Organic Mental Disorder, Rule Out Bipolar Disorder, Impulse Control Disorder NOS, History of Substance Abuse (Collateral History), Mild Mental Retardation (Provisional), Rule Out Borderline Intellectual Functioning, Reading Disorder NOS, and Personality Disorder NOS with Borderline Anti-Social Traits. E.G. has disturbed thinking and perception of reality. Her prognosis is poor for lasting change.

---

[4] "The GAF score is on an objective scale of zero to one hundred, with ten representing a homicidal or suicidal individual and one hundred representing someone who is functioning normally." State v. J.T., 455 N.J. Super. 176, 193 n.8 (App. Div. 2018). It is used by mental health clinicians and physicians to rate the social, occupational, and psychological functioning of adults.

A-3872-17T4

Dr. Lee concluded E.G. is not able to function as a minimally adequate parent for D.L.J., Jr., based on her mental health issues, maladaptive personality and character traits, and impairment of her cognitive and intellectual functioning.

Over a significant period, E.G. repeatedly failed to cooperate with the Division's efforts to provide treatment and services.[5] Her visitation with D.L.J., Jr. was sporadic.[6] The Division's expert's unrebutted opinion was that E.G. could not minimally parent D.L.J., Jr. now or in the foreseeable future, was unable to provide a safe and stable home for D.L.J., Jr., and did not and cannot nurture him. E.G.'s bond with D.L.J., Jr. was ambivalent and insecure. On the other hand, there was a low risk of psychological or emotional harm if D.L.J., Jr.'s relationship with E.G. was severed.

The Division's expert further opined D.L.J., Jr. has a positive and secure bond with his resource parents who provide a positive, nurturing, and secure home for him. There is a significant risk D.L.J., Jr. will suffer severe

---

[5] E.G. repeatedly missed service appointments, including multiple substance abuse evaluations and two psychological evaluations.

[6] E.G. had no visits with D.L.J., Jr. between June 2016 and January 2017. She attended only four visits with D.L.J., Jr. between February 2017 and April 2017.

psychological or emotional harm if his relationship with T.D.B. or R.B. is severed.

As to credibility, Judge Miller found E.G.'s testimony "to be unreliable due to her unresolved mental health deficits." Her testimony was "confused, evasive, and non-responsive to questions." She displayed poor recall. The majority of her testimony "was completely at odds" with the testimony of the Division's expert or caseworker and the documented record. The judge stated "[s]he appeared 'off' to the untrained eye."

Judge Miller found Dr. Lee's testimony to be unbiased and "convincing, reliable and credible in regards to his psychological and bonding opinions." The judge concluded "[h]is testimony was clear, precise, and corroborated by the Division's case notes and records," and "was not impeached during cross-examination." Judge Miller also found the testimony of caseworker Stephanie Martinez credible.

E.G. contends there is no substantial and credible evidence showing she harmed D.L.J., Jr. As recognized by Judge Miller, harm is not limited to physical abuse or neglect of children. Mental illnesses can be so serious and debilitating that they render a parent "unable to adequately care for and raise the children." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 439

(App. Div. 2001) (citing <u>In re Guardianship of R.G. & F.</u>, 155 N.J. Super. 186, 194 (App. Div. 1977)).

Our review of Judge Miller's decision is limited and deferential. <u>In re Guardianship of J.N.H.</u>, 172 N.J. 440, 472 (2002). We will not disturb a trial judge's factual findings so long as they are supported by substantial credible evidence. <u>See</u> <u>N.J. Div. of Youth & Family Servs. v. R.G.</u>, 217 N.J. 527, 552 (2014). We defer to the judge's evaluation of witness credibility, and to his expertise in family court matters. <u>Id.</u> at 552-53. Because the record contains substantial credible evidence to support Judge Miller's findings, there is no basis for us to disturb his well-reasoned decision. While we do not doubt that E.G. loves her son, she is not capable of caring for him by providing a safe and stable home for him. D.L.J., Jr. needs, and is entitled to, the security of a permanent home, with his resource parents, who wish to adopt him. D.L.J., Jr. wanted to be adopted by them if he was unable to return to his mother.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3872-17T4